Megow, Appellant, vs. Chicago, Milwaukee & St. Paul Railway Company, Respondent.

*November 11 — November 28, 1893.*

(1) *Railroads: Injury to property by fire: Nonsuit.* (2) *Appeal: Bills of exceptions: Cases and briefs.*

1. In an action for injury to a cranberry marsh by fire, a nonsuit was properly granted upon evidence which left it a matter of conjecture whether the injury was caused by the original fire started by de-

fendant twelve miles distant or by back-fires started to prevent its spread.

2. Circuit Court Rule XXIV, as to the preparation of bills of exceptions, and Supreme Court Rules VIII and IX, as to the preparation and printing of cases and briefs, will be strictly enforced.

APPEAL from the Circuit Court for *Juneau* County.

The case is stated in the opinion.

*J. J. Hughes*, attorney, and *G. Stevens*, of counsel, for the appellant.

For the respondent there was a brief by *C. H. Van Alstine*, attorney, and *John T. Fish*, of counsel, and oral argument by *Mr. Fish*.

PINNEY, J.   This action was brought by the plaintiff to recover damages against the defendant for burning over his cranberry marsh, situate on the N. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 3, township 18, range 2, in Juneau county, on the 9th day of August, 1886; and it is claimed that the fire which did the injury was negligently caused by the defendant, and was communicated on the 28th day of July, twelve days previous, to the grass, rubbish, and decayed vegetable matter on and along the right of way of the defendant between sections 21 and 22 in town 20, range 2, at a point over nine miles nearly directly north of the plaintiff's premises, and from which point the fire spread over and upon the marsh lands between Beaver brook and Little Yellow, a branch of Yellow river, passing in a circuitous route to the southeast, and finally to the southwest, where it is claimed the fire reached the plaintiff's premises and caused the damages in question.   The distance which it is thus claimed the fire ran in twelve days was over twelve miles, and the country over which it passed on both sides of this route, and to the north and south as well, consists of a large marsh, interspersed with patches of hard land covered with oak bushes and scrubs and a few scattering jack

pines in places.   The marsh was boggy, and at times quite wet, and had not been burned over regularly, so that in many places there had accumulated layers of decayed grass of former years, beaten down among the peat bogs; and the marsh was at the time covered with the then green growth of the season.   The season had been an unusually dry one, and the dead grass and decayed vegetation and bogs were in a condition favorable to the spread of fire.   The wind for the most part was from the northwest and north, and finally from the northeast.

.Owing to the distance the fire is claimed to have spread, and the twelve days it was burning, and such intervening patches or bodies of hard ground covered with bushes, etc., great difficulty was experienced in attempting to trace the fire from the point of its origin to the plaintiff's premises, and in showing that this fire thus negligently communicated to the marsh, as it is claimed, burned over the plaintiff's cranberry marsh; and this difficulty was very materially increased by the fact that several back fires had been set at intervals in the mean time to intercept and prevent the passage of the original or main fire to the south, and the further fact that no witness was produced who was able to testify as a fact within his knowledge that the original fire caused the injury complained of, and that those who saw the fire burn over the plaintiff's marsh were unable to say as a fact that it was not the result of the back fires instead of the original fire.   The witnesses upon whose testimony the plaintiff relied to trace the fire only saw it progressing in a southeast direction occasionally and for no considerable portion of the time it was running the entire distance, and almost invariably at a time when engaged in back-firing or making barriers to its progress in order to protect property of their own, and which particularly engrossed their attention.   The evidence shows that when the marsh was set on fire in back-firing or otherwise,

it might be apparently entirely whipped out or quenched with water, still the fire would get in the layers of dead grass or peat bogs and smoulder for days even, until, its immediate surroundings becoming dry by the action of the sun and fire, it would be fanned into action by a slight wind, and, communicating with the grass near by, would be kindled and spread into a raging and destructive fire. Another difficulty experienced, known to all familiar with such fires, was that the fire, whether a back fire or original fire, will often work back against the wind, get a new head, and suddenly spread to localities to which it did not seem probable the fire would extend.

The evidence is quite lengthy, and the trial doubtless occupied some days. After it was closed on both sides the defendant moved for a nonsuit, and the circuit court granted it, for the reason, in substance, that there was not sufficient evidence to go to the jury to show that the original fire caused the injury complained of, and not the back fires put out to interrupt its progress, acting upon the rule laid down in *Marvin v. C., M. & St. P. R. Co.* 79 Wis. 140.

The fire-breaks and back-firing were nearly on a direct line south towards the plaintiff's premises, while, by the plaintiff's contention, the course of the fire caused by the defendant diverged in a southeasterly direction about three or four miles, crossing Little Yellow and again recrossing it and passing back to the southwest to the plaintiff's premises. The back-firing was on interior and shorter lines, and about eight of these back fires were set at intervals between where the fire broke out and the plaintiff's premises; and there is evidence showing that in three instances, at least, the back fires escaped and went easterly and south, and there is no satisfactory evidence that they were extinguished. For two days before the fire burned the plaintiff's premises the entire country to the north was on fire for several miles in breadth, and whether the injury complained

of was in fact caused by the first fire, which passed to the southeast and again to the southwest, or a line of fire on the west of it, moving south, is left, so far as the evidence goes, to mere conjecture, and more extended comments on the evidence would serve no useful purpose. If the case had been sent to the jury, they would have been left to guess at or. conjecture a result which the law requires should be fairly established by competent evidence. Such was the opinion of the court after hearing the evidence as it was produced, and with advantages for understanding and appreciating its force and weight which we do not possess.

The argument here necessarily proceeded without previous reading of the evidence, and without a carefully prepared brief outlining and stating in detail the points relied on by the appellant, with references to the folios of the case where the evidence would be found which it was claimed was sufficient to support them and warrant a verdict; and, while the case was argued very fully, under such circumstances an oral argument, of itself, on a complicated and uncertain state of facts, fails to give the court the necessary explanation and assistance to properly understand the case. The bill of exceptions extends over 165 pages, consisting only of the stenographer's notes, prefaced by a caption, and closing with the formal conclusion of a bill. It is in no proper sense in compliance with Rule XXIV of the Circuit Court Rules, and the case is extremely defective for want of proper proof-reading, sentences being improperly divided which probably were originally very obscure; and references to various points in the evidence are so imperfect that it is extremely difficult, and in several instances impossible, to arrive at the real force and meaning of the evidence. We have not been favored with a brief on behalf of the appellant in compliance with the rule, stating succinctly the points and grounds relied on by the appel-

Hoffman vs. The Chicago, Milwaukee & St. Paul R. Co.

lant in order to trace the fire from where it was set or broke out to the plaintiff's land in question, with suitable references to the folios of the case, but merely with a meager statement of less than a page, and an imperfect sketch map, and a reference to the "Case, page 1 to 124." Neither the case nor brief is in compliance with the rules of this court, and we take this occasion to say that in the future the court will be forced to decline the examination of cases so imperfectly prepared, and that Rules VIII and IX in respect to the preparation and printing of cases and briefs in this court, as well as the rule in respect to the preparation of bills of exceptions, will be strictly enforced. We have, however, examined the case with care, to see if error in the ruling of the circuit court was shown affirmatively by it, but have been unable to see any safe or substantial ground upon which we ought to interfere to reverse the decision of the circuit court, and its judgment must therefore be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.