BRENNAN LUMBER COMPANY v. GREAT NORTHERN RAILWAY
COMPANY.[1]

June 13, 1900.

Nos. 12,114—(151).

**Fire—Evidence.**

The evidence produced at a second trial of this case (see 77 Minn. 360), at which plaintiff again had a verdict, examined and considered. *Held,* that the plaintiff again failed sufficiently to trace, identify, and connect the fire which destroyed its property with that set out on defendant's right of way, and relied upon as the origin of the one first mentioned.

**Judgment notwithstanding Verdict.**

*Held,* further, that, in accordance with the provisions of Laws 1895, c. 320, judgment should be entered in favor of defendant notwithstanding the verdict; and it is so ordered.

[1] Reported in 83 N. W. 137.

Action in the district court for Pine county to recover $130,000 and interest, damages for injury to property occasioned by fire alleged to have been set by defendant's engine. The case was tried before Crosby, J., and a jury, which rendered a verdict in favor of plaintiff for $57,535.62. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*C. Wellington* and *R. C. Saunders,* for appellant.

*Clapp & Macartney* and *L. H. McKusick,* for respondent.

COLLINS, J.

Appeal from an order denying defendant's alternative motion made under the provisions of Laws 1895, c. 320, after a verdict in plaintiff's favor, in an action brought to recover damages alleged to have been caused by a fire set by one of defendant's locomotives.

The cause has been here before (77 Minn. 360, 79 N. W. 1032), at which time a like order was reversed, and a new trial granted on the ground that from the evidence it did not sufficiently appear that the fire which caused the damage was traced or identified as having been started by the locomotive. It is obvious that the principal question at the present time, and one which must be disposed of, is whether plaintiff was more successful at the second than at the first trial in its efforts to adduce evidence which would tend to connect the fire which destroyed its property with a fire started by defendant's locomotive. If there was no substantial difference in the testimony, if there was still a failure to trace and identify by evidence the fire which it is contended was set by the locomotive with that which caused the damage, there remains a failure of proof, and the second verdict must be set aside on the same ground and for the same reason as was the first. A verdict in favor of plaintiff a second time, without additional evidence connecting the fires, and fairly establishing that plaintiff's loss was the result of defendant's negligence, must meet the fate of the first verdict,—it must be set aside.

When the cause was here before, the testimony of a number of witnesses for plaintiff, through whom the attempt was made to identify and connect the fires, was considered in the opinion quite

in detail.   These same witnesses testified at the second trial, but nothing material is claimed for their evidence, so far as it tended to supply the lack of proof, and its further consideration may be dismissed by saying that one or two of these witnesses were quite forgetful as to what they had previously testified to as to some matters of importance to the defendant herein.   A failure to remember previous testimony is sometimes of such a notable character as to suggest that it is not altogether attributable to lapse of memory.

We need not refer particularly to the locality in which was situated the plaintiff's pine timber said to have been damaged, nor to the point where the fire in question originated according to the testimony of the witness Mortinson, nor to other matters so fully detailed in the former opinion.   These things will appear sufficiently for present purposes upon a perusal thereof.   So we pass to a discussion of the additional testimony produced by plaintiff in support of its contention, and for the purpose of supplying the defect in and failure of proof before mentioned.   Three new witnesses appeared, and were sworn, namely, Martin Paige, W. C. Backus, and A. J. Lammers.

Paige was a pine-land cruiser, residing at Eau Claire, Wisconsin, at which place Davis, plaintiff's general manager, and a witness at both trials, also resided.   Backus was in the employ of Paige. Both left Hinckley on September 16, and camped that night on section 36, in the township north of the one in which were the bridges numbered 83 and 84, between which the fire testified to by Mortinson was set.   This camp was something over a mile north, the intervening country, as well as all in the vicinity for miles about, being heavily timbered.   Towards evening of September 17 smoke was observable to the south.   That night the camp was moved two miles to the north, and smoke was still noticeable.   On the morning of September 21, both men returned to the town of Hinckley, less than seven miles easterly.   Their course was about due southeast for some four miles, and until they struck the railroad track, at about the same distance northeast of bridges 83 and 84, and thence along the track to the town.   On the way, and about half a mile from the last-mentioned camp, they came to the edge of a fire which was burning slowly, evidently towards the north.

From this point to that at which they struck the railway track the ground had been generally burned over. They saw no fire to the south and none to the north. They made no investigation of any kind, and, at most, merely observed, as they walked along, that they were crossing the pathway of a recent fire. Backus testified the same, in substance; and the question is, did this evidence tend in any degree to trace or identify the fire which started upon defendant's right of way on September 17, at a point between bridges numbered 83 and 84, as the one which afterwards burned the timber in question?

Giving to their testimony its greatest weight, it establishes two distinct facts: First, That from a point something over a mile north of defendant's line of railway both men saw smoke to the south on the evening of September 17. How far south—that is, at what distance, or whether this smoke was that of the fire which is said to have caused the damage, or was from the fire south of defendant's line of railroad, which, according to Mortinson and other witnesses, had been burning for one or two days before—they did not pretend to state. Second. That on September 21, as they walked to Hinckley, they crossed a strip of heavily timbered country which had been burned over within two or three days. This was south of plaintiff's lands, and at no time when on this line of march were these witnesses within three miles of the point between the bridges where it is claimed the fire started. That a strip of country to the west of Hinckley had been run over by fire on or just prior to the 21st was established by this evidence.

That smoke prevailed in abundance south of section 36, on which they camped prior to September 17, and that fire had burned over the ground covered by them as they journeyed on the 21st, was undisputed and indisputable at the first trial as well as the second. Both parties have asserted it all through the litigation. There has never been any contention over it. But that there was smoke in the direction of defendant's line of railway, and the fact of fire, or of ground burned over, at the place fixed by these two witnesses, is not an identification of the fire which destroyed plaintiff's timber. It is not a tracing of the fire set out by defendant's locomotive on its right of way to the plaintiff's pine land, several miles

north. It does not serve to connect one fire with the other with any degree of certainty. The testimony of these witnesses did not aid the plaintiff in its efforts to trace the fire which caused the damage to its source or origin. As a factor in the task incumbent upon the plaintiff, to trace and identify by this evidence this particular fire from the right of way to plaintiff's premises, this testimony was of no value.

In the former opinion reference was made to the fact that plaintiff's timber was injured in 1891, that this action was not brought until the year 1896, and that meantime, in 1894, the great Hinckley fire, which destroyed a large number of human beings, hundreds of animals, and denuded the country of its timber, had swept over the same section; and these facts, as well as the further fact that Davis, the manager, who was on the ground and had every opportunity to investigate, and to acquire all of the information possible, failed to do so, and made no claim upon defendant until this action was brought, more than five years later, were given some consideration when weighing evidence, and when reiterating and applying the proposition laid down in an earlier case, that "under such circumstances it was necessary that the fire should be carefully traced and identified by the evidence from the right of way to plaintiff's premises."

In this connection, we cannot refrain from mentioning that on this trial Davis testified that he saw no fires in the vicinity of Hinckley prior to the 22d, except one to the southwest; but he was compelled to admit, in substance, that in May, 1894, when a fire claim made against the defendant by the witness Lammers, before mentioned, was being investigated, he said, in the presence of several witnesses, that there were fires all around that country for a week before Lammers' camp was destroyed (September 22); that he knew of fires north, south, east, and west of the town at that time; and that he so testified at the former trial. There was also a letter from Davis to one of defendant's counsel, sent in reply to a telegram, of date June 1, 1894, which tended much to weaken Davis' testimony, being somewhat at variance therewith. Another circumstance: Paige and Backus were residents of Eau Claire, Davis'

place of residence, and did not testify in this case until the second trial, as before stated. Nine years to a day had elapsed between the day when these two were camped on section 36 and the day they gave their testimony. When questioned as to their recollection of the circumstances surrounding their travels on that and the few days which immediately followed,—circumstances not uncommon for pine-land cruisers,—they stated that just a week prior to the commencement of the second trial one of them accidentally met Davis at Eau Claire, and was asked if he happened to be in the vicinity of Hinckley in September, 1891. This led to a disclosure of their trip, and a statement as to what had been observed,— matters that had not been thought of in the meantime, a period of nearly nine years. It is true that their testimony did not materially benefit the plaintiff, but we mention it as one of the facts which no juror should, and no court can, disregard, when estimating the worth of a witness' testimony.

It is undoubtedly the fact, as stated by one of plaintiff's counsel when arguing his case, that after a number of years had passed away it would be extremely difficult, and perhaps impossible, for a party who had suffered damages by fire in a heavily timbered country to trace, identify, and connect it with one which had been set out by another. But, because of this difficulty, the sufferer cannot expect the rules which must govern courts and juries to be cast aside, that he may obtain a verdict for damages. That these rules demand that the jury must arrive at a result in his favor upon substantial evidence, and not by guess or conjecture, is his misfortune, but that cannot be allowed to stand in the way of right and justice in any given case.

We have said that there was another witness for plaintiff, one Lammers, whose testimony was received on this trial for the first time. Lammers was a lumberman with his camp about two and one-half miles north of the point at which Paige and Backus struck defendant's line of railway when going to Hinckley on the 21st, and about five miles northeast of the place where the fire described by Mortinson started. His testimony was that on the afternoon of September 17 he discovered a fire in the vicinity of bridge numbered 89 on defendant's line, which was over two miles northeast

of the point described by Mortinson, and that he traced this fire to his camp, two miles north, which was destroyed on the 22d. He recovered damages of defendant on account of this fire, and it must be conceded by all that this particular fire, which originated about noon near bridge 89, was not the fire described as having its origin about the same time two miles southwest, between bridges 83 and 84; the latter being the fire on which plaintiff's case rests. So that Lammers' testimony was, in fact, an injury to plaintiff; for it tended to show and establish exactly what defendant relied upon, that there were a number of fires in that vicinity at that time, and also whether that depended upon by plaintiff as having spread to its premises, or some other for which defendant was in no way responsible, could not be determined with that directness and certainty of proof which must be the foundation of a verdict against an alleged wrongdoer.

There were a large number of witnesses introduced by defendant, whose testimony was in the main devoted to establishing the prevalence of separate and independent fires in the vicinity of plaintiff's lands at and about the time in question. That it was extremely dry just then stands admitted, and that there were a number of other fires running in the woods was not controverted by plaintiff's counsel. Some of these witnesses were farmers who had suffered losses, and had a vivid recollection as to dates and localities. A large number were men who were in plaintiff's employ in September, 1891, when the damage was done, and at work in and about its mill at Hinckley, which was about three miles south of the main body of plaintiff's timber. By them it was shown, and was not disputed, that one or more of these fires threatened the town, and especially plaintiff's lumber yard, and that at different times from the 19th to the 22d of September plaintiff set "back-fires," so called, near its mill, for self-protection. There was no evidence that plaintiff took any precautions to prevent the escape of these back-fires to the north and northwest. While there is no testimony which would warrant a finding that these back-fires actually spread to plaintiff's timber, and damaged it, independent of any other fires, it might be inferred from the circumstances with almost as much foundation for the inference as is found for a like inference as to

the fire set by the defendant between the two bridges before mentioned.

To sum up the situation at the time the cause was submitted to the jury a second time: The plaintiff contended that on September 17, 1891, and close to the hour of noon, one of defendant's locomotives started a fire about one-half mile east of bridge numbered 83, and west of bridge numbered 84; that the wind was from the south; that this fire, in the course of some five days, traveled generally in a northerly direction, and at the same time spread in a northeasterly and northwesterly direction, and covered a tract of country containing 108 square miles. Plaintiff did not by direct evidence, or by facts and circumstances which were clear or convincing, trace this fire from its source to any part of its timber land; the nearest point testified to by witness being two and one-half miles distant.

The testimony of the witness Lammers was a positive injury to plaintiff, while that of Paige and Backus we have detailed and commented upon as of no value. The case was sent to the jury exactly as before, without a witness who testified to any consecutive tracing from one section to another, or from one township to another, and entirely devoid of proof which would justify a jury in saying that it had been shown that the fire which was set on defendant's right of way, according to Mortinson, had by itself, or in conjunction with some other fire or fires then prevailing, according to the undisputed evidence, spread to plaintiff's land, and there caused the injury complained of. It was all conjecture and surmise. There was no testimony which to any extent supplemented or aided that presented, considered, and declared to be insufficient when the case was here before. As was said in that opinion, at page 375:

"The complex situation as to the various fires in that vicinity or region, and plaintiff's failure to trace this one to its source, must have left the case one where the jury could not, as a legitimate inference from all the facts, have rendered a verdict properly in favor of the plaintiff."

And this verdict cannot stand, unless we are to surrender all control over verdicts which are without evidence to support them. That we are not to do in the present condition of the law. It must be set aside and vacated.

At the close of the testimony, and prior to the submission of the case to the jury, defendant's counsel moved the court upon all of the evidence to direct a verdict in favor of the defendant for several specified reasons, which motion was denied. And thereafter the alternative motion provided for in Laws 1895, c. 320, for judgment in defendant's favor notwithstanding the verdict, or, if denied, for a new trial, was made. This motion was wholly denied. We are therefore confronted with the question whether it is our duty to order a new trial, or to order and direct that judgment be entered in favor of the defendant as provided in the statute just referred to. In Cruikshank v. St. Paul Fire & M. Ins. Co., 75 Minn. 266, 77 N. W. 958, it was held that this

"Motion should only be granted when it clearly appears from the evidence that the cause of action or defense sought to be established could not, in point of substance, constitute a legal cause of action or a legal defense; and that it should be denied where it appears probable that the party has a good cause of action, or a good defense, and that the defects in the evidence are of such a character that they probably could be supplied upon another trial."

A majority of the court are decidedly of the opinion that a new trial of this cause would be of no avail to the plaintiff. On the former appeal the order of the court below was reversed, in so far as it denied defendant's motion for a new trial, on the express ground of a clear failure of evidence sufficient to support a verdict. With this defect of proof in mind, the plaintiff again brought its case to trial. And again is there a lack of evidence on the main point. We believe that the litigation has now reached a stage where we can say that the defects in the evidence are of such a character that they cannot be supplied at another trial, and that it would be useless to direct that another be had.

Therefore it is ordered that upon remittitur to the court below judgment be entered in favor of the defendant.

BROWN and LEWIS, JJ. (dissenting).

We agree with our brethren that there is not sufficient evidence to justify a finding that the fire alleged to have been set and started by defendant spread to the premises of plaintiff, and caused the damage complained of, and for this reason a new trial should be

granted. But we cannot subscribe to the conclusion that final judgment should be ordered for defendant. The action is one to recover damages for injury to plaintiff's property caused by a fire alleged to have been negligently set and started by defendant, and one for trial by a jury. In our judgment, this court has no power or right to deprive plaintiff of its constitutional right to such a trial in.this manner. Wilcox v. Landberg, 30 Minn. 93, 14 N. W. 365. This disposition of the case is not authorized by Laws 1895, c. 320, as construed and interpreted by this court, speaking through Justice MITCHELL, in Cruikshank v. St. Paul Fire & M. Ins. Co., 75 Minn. 266, 77 N. W. 958. It is there said (page 268) that judgment notwithstanding the verdict of a jury

"Should not be granted unless it clearly appeared from the whole evidence that the cause of action, or defense, sought to be established could not, in point of substance, constitute a legal cause of action or a legal defense.

This court has acted on this construction of the statute and refused to order judgment even where there was a total absence of evidence on some material point, but where it appeared probable that the party had a good cause of action or defense, and that the defect in the evidence could be supplied on another trial."

This rule was followed and applied in Kreatz v. St. Cloud School Dist., 79 Minn. 14, 81 N. W. 533, and other cases, and should not be departed from. In our opinion, it does not appear from the record in this case that sufficient evidence might not be supplied upon another trial.