NOAH SWENSON v. CHARLES ERLANDSON and Others.[1]

May 23, 1902.

Nos. 12,941—(61).

**Fire—Negligence—Evidence.**

A person cannot be made liable for the destruction of the property of another by fire alleged to have been negligently started by him, unless his responsibility for the origin and cause of the fire be shown by evidence clear and convincing to an unprejudiced mind. The verdict in such cases cannot be upheld when based upon speculation and conjecture.

**Same—Evidence Insufficient.**

In an action for damages for the destruction of property by fire alleged to have been set and started by the negligence of defendants, the evidence is examined, and *held* insufficient to support a recovery by plaintiff; and judgment is ordered for defendants notwithstanding the verdict of the jury.

Appeal by defendants from an order of the district court for Lac qui Parle county, Flaherty, J., denying a motion for judgment in their favor notwithstanding the verdict or for a new trial. Reversed, and judgment ordered for defendants.

*John W. Arctander* and *Palmer & McElligott,* for appellants.
*H. L. Hayden* and *A. J. Volstead,* for respondent.

BROWN, J.

Action to recover damages for the destruction of plaintiff's property by fire, alleged to have been set and started by the negligence and carelessness of defendants. Plaintiff had a verdict in the

[1] Reported in 90 N. W. 534.

court below for the stipulated value of the property, whereupon defendants moved the court for judgment notwithstanding the same, and appeal from an order denying it.

The only question presented for our consideration is whether there is any evidence reasonably tending to sustain the allegations of the complaint that the fire which destroyed plaintiff's property was set by defendants' threshing engine. If there was any such evidence, the order appealed from should be affirmed, otherwise reversed.

Plaintiff owns a farm in Lac qui Parle county, extending through which is a public highway running north and south. West of and adjacent to the highway, and on the line thereof, he had erected a large barn in which to house his stock and hay for their feed, in each end of which were large doors, one opening immediately upon the highway. At about six o'clock in the evening of October 9, 1897, defendants passed along this highway with their steam threshing engine, the same being a "straw burner," so called; and it is claimed by plaintiff that the engine was negligently operated by the persons in charge of it, by reason of which sparks were permitted to escape from the smokestack, and cinders to fall from the ash pan, which subsequently, at about twelve o'clock of the same night, ignited combustible material into which they had fallen, spreading thence to the barn, and burning the same with all its contents. It was raining at about the time the engine passed the barn, the weather was damp, and it continued to rain for some time thereafter. Just how long, or to what extent, the evidence is not clear. The complaint alleges the negligence of defendants in general terms, the precise act or omission complained of not being specified or pointed out; and the evidence to fix responsibility for the fire upon them is entirely circumstantial. It is claimed that defendants were negligent in two respects: (1) In permitting sparks to escape from the smokestack of the engine; and (2) in permitting live cinders and coals to fall from the ash pan.

1. There is evidence in the case tending to show that at the time the engine passed the barn a number of sparks were permitted to escape from the smokestack. Plaintiff and other witnesses so

testified. But it is not, nor can it be, seriously contended that the fire in question had its origin in such sparks. The engine was a straw burner. Straw was being used as fuel, and any sparks that might escape in that direction would necessarily be short-lived. It would be almost impossible that they could retain life for six hours, and during a period of such dampness as is shown by the evidence, and be the cause of the fire. Such sparks, from the very nature of things, lose their life and vitality very soon after coming into the open air; and, if they could ignite a fire at all, it would necessarily be almost immediately after' escaping from the engine, and not at a remote period of six hours thereafter. So the question whether the fire was started by sparks from the smokestack may be dismissed without further comment as too highly improbable to justify serious consideration.

2. The important question in the case is whether the evidence sufficiently shows that a live cinder was permitted to fall from the ash pan of the engine, which subsequently ignited straw or manure into which it was deposited, spreading from thence to and into the barn. There is evidence in the case tending to show that a cinder, such as is likely to escape from the ash pan of engines of this class, was found within eighteen or twenty feet of the barn at the time of or after the fire, and within the burned district; i. e., within the territory over which the fire spread. One witness found some manure burning in the highway and in the track of the engine, between which and the barn all had been burned over, leaving something of a V-shaped tract; and plaintiff testified that he found a cinder at that point. But when so discovered the fire was still burning in the road, and had spread out against the wind over the track of the engine and beyond the point where the cinder was found. It is also claimed that other cinders of the same character were found the day following the fire, scattered at various places along the highway south of the barn for a distance of ten or fifteen rods. It is urged on the part of plaintiff that the fair inferences and deductions from these circumstances fix the responsibility for the fire upon defendants with reasonable certainty, and that the evidence was sufficient to justify a finding of negligence on their part, and to sustain the verdict of the jury.

The highway over which the engine passed and in the immediate vicinity of the barn was a well-traveled and well-worn way, there being no grass or combustible material in the roadway in the vicinity of the barn, except light particles of manure, and perhaps some scattering hay or straw. Upon the ground at the east end of the barn upon this occasion was a load of straw, deposited there to be used as bedding for the horses; and at one side a rack of hay, to be unloaded into the loft. The highway was used by the public generally, and was extensively traveled both night and day. Plaintiff's residence was on the east side of the highway, at a distance of about two hundred feet from the barn. No witness was produced who claimed to have seen any cinders or live coals fall from the ash pan of the engine, nor was any witness produced who discovered any such cinders alive or extinguished before the fire. Plaintiff was between the engine and the barn at the time the engine passed, and his hired men were around and about the barn, crossing and recrossing the highway at the precise point where it is now claimed a cinder was found for a considerable time thereafter. Soon after the engine passed, plaintiff and his hired men repaired to the residence for their supper, after which they returned to the barn, unloaded the hay, and pushed the wagon from which it was unloaded along the highway, and over the course taken by the engine, and were otherwise engaged about this spot for two hours or more after the engine had passed; yet none of them saw any fire, or evidence of fire, or discovered the odor of burning manure or straw. The fire was discovered at about twelve o'clock,—six hours after the passing of the engine, and two or three hours after plaintiff and his hired men had left the barn and retired for the night. When discovered, it was principally in the roof or hayloft.

A person cannot be made liable in cases of this kind on a mere probability or possibility that the fire was caused by his negligence. There must be some positive proof which will permit of a conclusion based upon something besides conjecture and speculation. Orth v. St. Paul, M. & M. Ry. Co., 47 Minn. 384, 50 N. W. 363; Baxter v. Great Northern Ry. Co., 73 Minn. 189, 75 N. W. 1114; Megow v. Chicago, M. & St. P. Ry. Co., 86 Wis. 466, 56 N. W. 1099.

The origin of the fire must be established by evidence reasonably certain and convincing to an unprejudiced and unbiased mind, and until there is some such evidence there can be no recovery. Circumstantial evidence is, of course, competent and proper, and often the only obtainable evidence in such cases; but, as such evidence consists in reasoning from facts which are known or proved, to establish such as are conjectured to exist, the process is fatally vicious and defective if the circumstances from which we seek to deduce the conclusion depend also upon conjecture and speculation. 3 Rice, Ev. § 342.

In this case we have as the alleged origin and cause of the fire the circumstance that a cinder, formed from burned straw or hay, was found in the highway adjacent to the barn, and within the burned district; and upon this, aided by all the other circumstances, must be based the conclusion that the same was deposited there by defendants' negligence, and that when so deposited it contained fire, which subsequently ignited surrounding combustibles and burned the barn. The theory that it so came there, or was the cause of the fire, is, in our judgment, wholly irreconcilable with the undisputed fact that plaintiff and his hired men were at the time and for at least two hours after the engine passed around and about the spot where it is claimed the cinder was found, and not one of them noticed it, or discovered the slightest evidence that would lead to the conclusion that anything of that sort was there. It was nearly dark at the time the engine passed, and quite dark when the men returned to the barn from their supper. It had been raining. The ground was damp. Plaintiff testified that it rained enough to make the road "a little sticky." This condition would tend to the extinguishment of a cinder if one in fact escaped from the engine. The cinder alleged to have been found was composed of burned straw or hay,—just the material with which the barn was filled and the yard covered. The wind was blowing quite hard at the time of the fire, and, in the nature of things, ashes and fire were scattered by it in all directions, and it is just as probable that the cinder was deposited where it was found by the wind as that the same came there from the engine. And, besides, the highway passing the barn was extensively used by people gener-

ally. Tramps were numerous, and people were frequently pass-
ing the barn both night and day. One of plaintiff's hired men was
in the habit of smoking a pipe, though it does not appear that he
indulged in his habit on this occasion. He was not present at the
trial, being in a foreign country.

The fact that cinders were found in the highway south of the
barn is not of controlling importance. Plaintiff testified that sev-
eral were found within a distance of ten or fifteen rods south of
the barn, and from this it is urged by counsel that the conclusion
must be that the engine was in such condition that it was "con-
stantly scattering fire in large chunks." This contention is wholly
incompatible with the undisputed fact that no fire whatever was
seen by any of the persons in plain view of the whole premises at
any time, either when the engine was passing or within two hours
or more thereafter. It is not suggested that any fire was started
by any of those cinders; and, if they were deposited in the high-
way by the engine, and were alive, and contained fire sufficient to
burn the ground around them, as is claimed, they most certainly
could have been seen or noticed by plaintiff and his hired men.
The condition and location of the fire when first discovered, the
fact that it was for the most part on the inside of the barn, and all
circumstances to which our attention was called in this connection
as tending to show that the fire had its origin on the outside, are
just as consistent with the theory that the same originated on the
inside as at the point on the highway where the cinder is claimed
to have been found. The fire was too far advanced, when first dis-
covered, to permit, from a mere consideration of its location and
condition at that time, of anything but a conjecture as to its
origin. Indeed, the fire had spread over the entire barn; the inside
was all afire; and to attempt to say just where it originated from
its condition and location at that time would be a mere random
guess.

There is one item of evidence, however, in this connection, of
some significance, that tends strongly against plaintiff's theory
that the fire started from the cinder found in the road; and that
is the fact that the pile of straw upon the ground east of the barn,
and partly between the same and the point at which plaintiff

claims the fire originated, was not entirely consumed when the fire was discovered, although the fire had spread throughout all parts of the barn. When we take into consideration the fact that the wind was blowing quite hard from the east, it is fair to assume that the straw lying between the alleged starting point of the fire and the barn, and nearly in the direct course of the wind, would have been entirely burned before the barn was almost consumed. It appears without controversy that the roof of the barn fell in soon after the fire was discovered, yet the straw referred to had not been wholly burned.

It is unnecessary to continue the discussion of the evidence. We have examined it with care and patience, and conclude upon the whole record that the circumstances relied upon by plaintiff are too improbable and conjectural to justify a recovery in his favor. The evidence furnishes at best but the foundation for a random guess or speculation by the jury, and is wholly insufficient to meet the requirements of the law. Numerous cases are found in the books in reference to railroad fires, where evidence of a fire springing up immediately or soon after the passing of an engine has been held sufficient, other probable causes being negatived, to sustain a finding that the same was started by sparks from the engine; but we have found no case where the breaking out of a fire after the lapse of six hours, and under such conditions of weather as are shown in this case, has been held sufficient.

The cause has been pending for some time. Two trials have been had in the court below, resulting in verdicts for each party, and their interests require that the litigation come to an end. To that end the order appealed from will be reversed, with directions to the court below to enter judgment for defendants notwithstanding the verdict of the jury.

The authority and duty of the court in cases of this kind to direct final judgment notwithstanding the verdict of the jury was settled in Brennan Lumber Co. v. Great Northern R. Co., 80 Minn. 205, 83 N. W. 137, and in Baxter v. Covenant Mut. Life Assn., 81 Minn. 1, 83 N. W. 459, and the rule there laid down was followed and applied in Minneapolis S. & D. Co. v. Great Northern R. Co., 83 Minn. 370, 86 N. W. 451. In the Brennan Lumber Co. case—

very similar to this—two verdicts had been rendered for the plaintiff, and approved by the trial court, yet this court held the evidence tending to show that the fire causing the damage there complained of was communicated from one of defendant's locomotives so highly improbable and speculative as to render it insufficient to support a recovery. In the Baxter case two verdicts had been returned for the plaintiff, based entirely upon circumstantial evidence, and, following the Brennan case, we sustained an order of the trial court directing judgment for defendant notwithstanding the verdict, on the ground of the insufficiency of the evidence to establish the fact contended for by the plaintiff, and which was essential to his right of recovery therein. In the case of Minneapolis S. & D. Co., supra, the court, speaking through Justice LOVELY, said: "Where there is no evidence reasonably tending to support a verdict, the duty of the court to say so is imperative. * * * [It] may not ignore the right of any party to demand interference with the privilege of a jury to indulge in conclusions based upon intangible surmises and speculations. * * * Mere possibilities can never establish the probability of a fact required to be proved in order to make a party liable in any action whatever. To decide otherwise would be to say that verdicts may rest upon mere possibility, speculation, and conjecture."

The cause is remanded, with directions to the court below to enter judgment for defendants.

Order reversed.

LEWIS, J. (dissenting).

I dissent on the ground that the evidence before the jury reasonably tended to show that the fire had its origin from cinders dropped in the road from the fire box of the passing engine. I think the evidence sufficient to go to the jury upon the following grounds: That the cinders found in the road were deposited by the engine, and were not blown there from the barn against the wind; that the cinders produced by a straw-burning engine to some degree retain fire after being dumped from the ash pit; that some of these clinkers were found in the road within the so-called V-shaped burned-over space; and, while a very slight rain had

fallen, it had not been sufficient to prevent the refuse upon the ground within this space from taking fire and burning. It is reasonable to assume that some hours later a cinder was fanned into flame by the rising wind, igniting the rubbish along the ground, and eating its way to the barn. And it also seems more reasonable to believe that the fire started at the apex of the V-shaped tract, and, with the wind, spread out from that point toward the barn, than to suppose that it originated in the barn and crept out to such a point, burning damp refuse matter, against the wind.

I attach no significance to the fact that all of the straw outside the barn was not consumed when the fire was discovered, because it would be most natural for the fire, pushed on by the wind, to reach on toward the more inflammable material in the barn, which was filled with dry hay, and so speedily carried upward and out at the roof. Nor does it seem of importance that the men did not discover the fire in the early evening, for it would undoubtedly take some time for the fire to work its way along the damp ground until, by the aid of the wind, it caught the drier material, as heretofore suggested. These facts, when considered in the light of all the other evidence and circumstances of the case, were sufficient to justify the jury in coming to their decision, and that conclusion by no means rested upon mere speculation and conjecture.