JOHN S. A. MARTYN v. MINNESOTA & INTERNATIONAL RAILWAY COMPANY.[1]

June 30, 1905.

Nos. 14,349—(167)

**Evidence.**

In an action for personal injuries the evidence is examined, and *held* insufficient to sustain a recovery by plaintiff.

Action in the district court for Ramsey county to recover $25,000 for personal injuries. The case was tried before Olin B. Lewis, J., and a jury, which rendered a verdict in favor of plaintiff for $6,000.

[1] Reported in 104 N. W. 133.

From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and judgment ordered for defendant.

*Durment & Moore,* for appellant.

*Samuel A. Anderson,* for respondent.

BROWN, J.

The facts in this case are as follows: Plaintiff was a switchman in the employ of defendant in its yards at Brainerd, and had been in such service for about five months at the time of the accident complained of. His duties had been performed in connection with an ordinary switch engine, equipped with footboards on which the switchman rode when the engine was in motion. His railroad experience was wholly limited to this particular service, and he had never worked with or about an engine used in operating trains, referred to in the record as a "road" engine. On the day in question the switch engine with which he was employed became disabled, and was unable to move a string of cars to which it was attached, and the yardmaster directed road engine No. 7 to go from the roundhouse, distant one-fourth mile or so from where the switch engine was disabled, to its assistance. Plaintiff and other switchmen accompanied this engine. After relieving the switch engine, the road engine was returned to the roundhouse, plaintiff turning the switch to let it onto the roundhouse track. After so turning the switch, plaintiff gave the engineer of this engine the usual signal to go forward, and prepared to board the engine as it passed him. The engine had reached the speed of about four miles an hour when it arrived at the switch where plaintiff was stationed. As it passed, plaintiff reached up and took hold of the handholds at the gangway between the engine proper and the tender, and attempted to place his foot on the step for the purpose of getting into the engine, when, as he alleges in his complaint, the engineer opened the throttle and turned on more steam, causing the engine suddenly to lurch or jerk forward, and throwing plaintiff to the ground with one of his feet under the engine, which was run over and badly injured. The jury returned a verdict for plaintiff, and defendant appealed from an order denying its motion for judgment notwithstanding the verdict.

The only question presented for our consideration is whether the evidence is sufficient to support a recovery by plaintiff. The case was here on a former appeal, and an order granting a new trial on the ground of the insufficiency of the evidence was sustained. Martyn v. Minnesota & Int. Ry. Co., 92 Minn. 302, 99 N. W. 1133.

The negligence charged in the complaint, and upon which plaintiff must recover, if at all, is, in substance, that at the time plaintiff attempted to board the engine, and when he was about to place his foot on the step for that purpose, the engineer suddenly, and without warning to plaintiff, carelessly and negligently started the engine running at a much greater rate of speed, by reason of which plaintiff was jerked, hurled, and thrown to the ground. The complaint contains no allegation of negligence on the part of the engineer in failing to observe a "slow down" signal claimed to have been given at the time plaintiff turned the switch, and, unless the evidence is sufficient to sustain the charge of negligence made in the complaint, no recovery can be had. Our examination leads to the conclusion that the charge of negligence there made is not sustained. There is no evidence to justify the claim that at the time plaintiff attempted to board the engine the engineer opened the throttle of his engine, thus causing it to shoot or jerk forward in the manner described by plaintiff. The only fair inference to be drawn from all the evidence is that the engine was operated in the ordinary and usual manner, and that the increase of speed was uniform and gradual, unaccompanied by jerks or sudden shoots forward. The engineer testified with clearness that he did not, at the time claimed, open the throttle of his engine, or otherwise turn on more steam; and in this he was fully corroborated by his fireman, who was present on the engine at the time, and in position to know whether anything unusual took place.

The only reliable testimony tending to support the allegations of the complaint was given by plaintiff himself, which best speaks for itself. He testified as follows:

> Q. Now, will you please indicate just how you stood and what you did after you gave the "come ahead" signal until the time you got hurt? A. I stood there and throwed the switch over, and then I gave him a signal to come ahead, like that

(illustrating), and then he came up towards me. When he was getting close to me I made a motion at him, like that (illustrating), and then I prepared to catch the engine, like that (illustrating), put my left foot up a little ways, and when the engine came up to me I made a motion (illustrating), and planned to put my foot in the step, and Mr. Smith applied more steam (I suppose it was), and threw my foot out of the step, and caused me to go down on the rail and lose my foot. * * * Q. Mr. Martyn, you say that Mr. Smith put more steam on, you supposed it was. Why do you suppose that? A. Why, that is the only thing that could make that jerk come. Q. That is the reason you say he put more steam on? A. Yes, sir. Q. You didn't hear him put on more steam, did you? A. No, sir; I didn't hear him. Q. Didn't see him put on more steam? A. No, sir. Q. And the only reason you supposed it was he put on more steam was that the jerk came? A. The reason I suppose that, there was nothing else to make it jerk that way. Q. That is, as you understand it, nothing else could make it jerk there? A. No, sir; there was nothing. Q. And it is simply because of that jerk you got that you say he put on more steam? A. Yes, sir. Q. As I understand you, you didn't get your right foot off the ground at all? A. No, sir; I didn't get it clear off the ground; no, sir. Q. And you were not thrown down at all? A. No, sir. Q. Were not thrown or jerked off your feet? A. I was not jerked clean off my feet; no, sir. Q. Now, how far had you moved down from the switch before you sat down or got off your feet? A. About five feet from the switch.

It will be noticed that there is no statement by plaintiff of a fact upon which either the court or jury could base a conclusion that the allegations of the complaint are true. He says that he gave the engineer the signal to proceed, after turning the switch, and that he made an effort to board the engine as it passed him; that, just as he was about to place his foot upon the step of the engine, the engineer applied more steam, as he supposed, causing the engine to jerk forward and throw him to the ground. He does not testify to the fact that the engineer

applied more steam, but he reasons that that must have been the fact, otherwise he would not have been jerked in the manner he claims he was. But he says he did not hear the engineer apply more steam, did not see him do it, and the only reason for supposing that he did was the jerk that came to him. There is no reliable testimony tending to corroborate plaintiff's reasoning or supposition. The fireman of the switch engine testified on this trial that he noticed the engine in question as plaintiff was about to board it, and that it "seemed suddenly to shoot ahead." But the testimony of this witness bordered so closely upon perjury as to call for the emphatic disapproval of the learned trial court. The witness had on the former trial of the action testified directly opposite to the testimony given on this trial, and he is entitled to little credence. The case remains with plaintiff's testimony alone to support the allegations of the complaint. It is clear that it falls far short of doing so.

A finding that the engineer was guilty of negligence, as charged in the complaint, could not, from this evidence, be sustained. Such a finding would have for its basis nothing more than speculation, conjecture, and supposition. Plaintiff supposed the engineer was negligent, but that sort of evidence is not what verdicts should be founded upon. The case is in line with other decisions of this court where the evidence has been found too conjectural to justify a recovery. Brennan Lumber Co. v. Great Northern Ry. Co., 80 Minn. 205, 83 N. W. 137; Baxter v. Covenant Mut. Life Assn., 81 Minn. 1, 83 N. W. 459; Swenson v. Erlandson, 86 Minn. 263, 90 N. W. 534; Minneapolis Sash & Door Co. v. Great Northern Ry. Co., 83 Minn. 370, 86 N. W. 451. The rate of speed of the engine soon after the accident is of no potential force; that fact has no fair tendency to show that it "jerked forward" just as plaintiff attempted to board it.

This was the second trial of the action. The first verdict rendered for plaintiff was set aside on the ground that the evidence was insufficient to support or sustain a recovery. On the second trial, plaintiff's case is no stronger; indeed, if anything, it is weaker. Suspicion is thrown upon its merits by the production of the witness whose testimony, either on the former or on this trial, is confessedly false. We are of opinion that a new trial would serve no useful purpose; it might encourage the introduction of further testimony of doubtful veracity.

95 M.—22

We are not to be understood by this remark as intending to cast any reflections upon plaintiff's attorney. We do not believe that he would knowingly offer untruthful testimony for the consideration of court or jury.

The order of the court below is therefore reversed, and the cause remanded with directions to enter judgment for defendant notwithstanding the verdict.