MAE A. McDONALD v. GREAT NORTHERN RAILWAY COMPANY.[1]

January 29, 1926.

No. 24,958.

**Verdict based on defective brakes not sustained by evidence.**

1. A conductor and an engineer in charge of a train received an order to wait at a station until another train cleared. In violation of this order, the engineer, with the approval of the conductor, took the train out on the track and proceeded, resulting in a head end collision and the death of the engineer. The trial court *held* that a recovery could not be had on the negligence of the conductor and the case was tried and a verdict rendered on the theory that the brakes were defective in violation of the Federal Safety Appliance Act. *Held*:

(1) The rule is that to sustain liability there must be something in the evidence which renders the conclusion of defective brakes more reasonable than any other which would be consistent with the brakes being adequate.

(2) The duty to have the brake appliance in proper working condition is absolute.

(3) A violation of the Safety Appliance Act is inferred from the mere fact that the safety appliance fails to function properly.

[1]Reported in 207 N. W. 194.

(4) The fact that an employe violates an order from his employer does not remove him from the protection of the Federal Safety Appliance Act.

(5) That plaintiff's evidence rests in conjecture and is insufficient to sustain a verdict.

**Negligence of conductor bars recovery by plaintiff.**

2. Upon this appeal it is proper for the appellate court to consider the ruling of the trial court excluding a recovery on the ground of the negligence of the conductor:

(a) Under the rules of the company both the engineer and conductor had a duty, personal to himself, to see that the order was not violated.

(b) Its violation by the engineer was negligence which continued to the place of the collision and was the producing cause of the accident.

(c) The fact that the conductor was also negligent in not preventing the engineer, the primary wrongdoer, from violating the order, will not permit plaintiff to recover upon the theory that the conductor's negligence was a contributing cause.

Appeal and Error, 4 C. J. p. 670 n. 91 New.

Master and Servant, 39 C. J. pp. 385 n. 52; 386 n. 56; 887 n. 57; 1058 n. 34; 1072 n. 65.

Action in the district court for Wright county to recover for the death of plaintiff's intestate. The case was tried before Giddings, J., and a jury which returned a verdict for plaintiff. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*A. L. Janes* and *Hoke, Krause & Faegre,* for appellant.

*Samuel A. Anderson,* for respondent.

WILSON, C. J.

This is an action to recover for the death of Hollis G. McDonald who was at the time of his death a locomotive engineer in the employment of defendant. There was a verdict for $20,000. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or a new trial. Defendant is an inter-

state railway company and decedent was at the time of his death engaged in interstate commerce work. The action is prosecuted under the Federal Employers Liability Act and the Federal Safety Appliance Act.

McCabe was the conductor and McDonald the engineer on a snowplow train, consisting of five units, a gondola car with snowplow, engine, flat car, dozer car and caboose. This train was fully equipped with automatic air brakes. In the engine, accessible to the engineer, was an air valve and another in the caboose known as the conductor's air valve. These valves were equipped with a handle for their operation and when opened remained so. The engine and caboose also had a dial or indicator showing the pressure of the air. On this train were Larson, Barnes and Saunderson, having the rank of conductors, acting as brakemen; Dahlin, the fireman; and Rassmussen in the cupola of the dozer car.

This train so equipped and manned was at the village of Delano on February 23, 1922, headed westerly for Willmar. On the same day defendant's passenger train No. 28 going east was run in two sections. McCabe and McDonald at Delano received from the train dispatcher a written telegraphic train order 56 which directed them not to move their snowplow train from Delano until the first section of train No. 28 had reached and cleared Delano. Each of these men read this order. Each had a copy of it. After the snowplow train made some yard movements, it came along at a speed of about two miles per hour by the station platform, where McCabe was standing. When the caboose was near McCabe, the engineer gave two short blasts of the whistle indicating that he was ready to go. This was answered by McCabe giving the highball signal indicating that he too was ready to go. Thus in direct violation of order 56 McDonald, knowing that the train No. 28 was not in and without objection from McCabe, took his train out on the track and started westerly.

Plaintiff obtained a verdict upon the theory that the air brakes were defective. The serious question is whether the evidence is sufficient to sustain the verdict—that is, whether plaintiff has met the burden of proof which the law puts upon her.

Plaintiff's version is this: That, as the train pulled out of Delano, McCabe stepped onto the rear platform of the caboose where he rode for about 600 feet and then went in. The three brakemen being there, McCabe, under the safety rules of the company, handed five orders, including order 56, to Barnes, who arranged them in order and put on a clip. He then handed them to Larson, who, sitting on a cushion, with Barnes on one side and Saunderson on the other, read them aloud, and immediately inquired of McCabe about first section train No. 28. Thereupon McCabe reached for the air valve and pulled the air, because it then occurred to him that train No. 28 was coming toward them. McCabe says a tremendous impression was made on his mind. He opened the air valve wide to set the brakes in emergency. He went out of the rear door and to the platform steps on the right to signal the engineer to stop the train, and he says the engineer was leaning out of the cab looking ahead. McCabe stepped back for only a moment, because of flying snow, and then continued to watch the engineer until he looked back and saw the signal. McCabe says to his best judgment when he pulled the air the train was near a certain crossing, about $1\frac{1}{4}$ to $1\frac{1}{2}$ miles from the depot; that between the time he set the brakes and the time when the engineer looked around, the train ran one mile; and that, during that mile, the speed of the train did not decrease, and that the engine was working (using) steam; that the engineer, upon seeing the signal, pulled his head in and the engine stopped working steam; that the train then ran 1,000 to 1,200 feet and came to a standstill; that he jumped off before the train stopped and started to the engine to tell the engineer to back away and that he had gotten near the tank of the engine when the crash came.

On a former trial of this case McCabe testified, in answer to how far the train ran after he set the brakes, as follows: "Well that's something I can't say  *  *  *  how far it did run, after I pulled the air. In a case like that, when you don't know how fast you are running and I was in a hurry, and I can't tell you how far it did run."

He further testified on the prior trial that he paid no attention to the distance the train ran after he pulled the air, but it seemed quite a distance. McCabe says he has been a conductor for 18 years; that there was no doubt in his mind but that the air brakes were working all right and were in good condition; that when he opened the air valve he plainly heard the air rush out, and from the sound of the air at that time he had no reason to feel that there was anything wrong with the brakes; that he never thought at any time that there was anything wrong with the brakes; the caboose windows were frosty so a person inside could not see out; that he did not know how far the place of collision was from Delano; that he did not know where Larson was when he, McCabe, was on the rear of the caboose after turning the air valve; that he does not recall a single object along the track, a single place or a single structure or anything to indicate to him where the train was after he went into the caboose on leaving Delano until the collision occurred; that there was no occasion to look at anything until after he pulled the air and that then he didn't have time to look at anything, and he says: "It seemed a long time while you were going through it, but when you commence to think it over afterwards and getting the time of the other train and everything going over the same track then you know pretty well that it didn't take long;" that until he pulled the air he had no reason to give attention to the lapse of time.

Upon the assumption of the truthfulness of McCabe's testimony, plaintiff put in evidence the expert opinion of three locomotive engineers, to the effect that the brakes were not in proper working condition. This is based upon the statement of McCabe, as to location of the train, and it ran a mile after he pulled the air, without reduction in speed, and then 1,000 to 1,200 feet farther after the steam was shut off.

Barnes, Larson and Saunderson called by the defendant say, as the train left Delano, they were with McCabe on the rear platform and that when out $\frac{1}{4}$ to $\frac{1}{2}$ mile, they went into the caboose; that the train was going about 40 miles per hour; that on entering the caboose they removed their mittens and rubbers and visited briefly;

that Barnes upon receiving the orders from McCabe unfolded and arranged them in order to be checked against the clearance card. There was no thought of hurry. From the evidence this may have required three minutes and adding to this the time previously elapsing and the time after pulling the air readily brings the train to the place of collision. These three men substantially agree that upon McCabe puling the air they realized that their lives were in peril by a collision that might occur at any moment. They heard the whistle of the air leaving the train line; they heard the grinding of the brakes; they felt the swinging of the car, and they recognized the working of the brakes. This was also noticed and recognized by the fireman. Rassmussen, riding in the cupola of the dozer car, feeling the same went to his window and looked out and saw a man on the steps of the caboose "swinging down the train" and he closed the window and the crash came at once.

The movements of the men in the caboose were fast. Larson claims to have preceded McCabe to the rear right hand steps to signal the engineer and while doing so says McCabe joined him. That the engineer got the signal and as the train was slowing down he, Larson, went to the other side of the caboose and looked ahead and saw the passenger train so close that he called to McCabe to jump as he himself did. Barnes claims McCabe followed Larson out of the caboose and as he, Barnes, started out McCabe closed the door in his face, causing him to lose his balance and before he got out the collision came. Saunderson says that when the air was pulled "there was a rush and we started to get out." That Larson went first, McCabe second, that he was behind Barnes who had the door open when the crash came. Rassmussen says he used the air eight times between Delano and the place of accident, the last time being about three quarters of a mile therefrom. He used it in raising the flanges so as to clear the planks at crossings.

The testimony of defendant's witnesses located as they were, and corroborated by common experience, must also be construed under the supposition that they were actuated by the same motive as McCabe to avoid injury, although they were not depressed by the

responsibility for prospective results. If so, there can be little doubt but that the brakes were at all times efficient. The rule is that to sustain liability there must be something in the evidence which renders the conclusion of defective brakes more reasonable than any other conclusion which would be consistent with the brakes being adequate.

If the train ran a mile after the air was pulled without decreasing speed and then a quarter of a mile after the steam was shut off, no one could claim the brakes were efficient. If this is established as a fact, the foundation for plaintiff's experts to give their opinion is ample. Such a train should have stopped in from 1,200 to 1,500 feet. If steam was not shut off it might run 200 to 300 feet further and if the air valve was not lapsed by the engineer it may run from 2,000 to 2,500 feet. The duty to have the brake appliances in proper working condition is absolute. St. Louis, I. M. & S. Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 618, 52 L. ed. 1061; Chicago, B. & Q. Ry. Co. v. U. S. 220 U. S. 559, 31 Sup. Ct. 612, 55 L. ed. 582; Delk v. St. L. & S. F. R. Co. 220 U. S. 580, 31 Sup. Ct. 617, 55 L. ed. 590; Chicago, R. I. & P. Ry. Co. v. Brown, 229 U. S. 317, 33 Sup. Ct. 840, 57 L. ed. 1204; Minneapolis & St. L. R. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. ed. 995; Louisville & N. R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. ed. 931.

Violation of the Safety Appliance Act is inferred from the mere fact that the safety appliance fails to function properly. Gotschall v. M. & St. L. R. Co. 125 Minn. 525, 147 N. W. 430, same case 244 U. S. 66, 37 Sup. Ct. 598, 61 L. ed. 995; Louisville & N. R. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. ed. 931. That view of the evidence most favorable to plaintiff must be accepted. Knudson v. G. N. Ry. Co. 114 Minn. 244, 130 N. W. 994; Lewis v. C. St. P. M. & O. Ry. Co. 111 Minn. 509, 127 N. W. 180. The fact that he violated order 56 does not remove him from the protection of the Safety Appliance Act. Spokane & I. E. R. Co. v. Campbell, 241 U. S. 497, 36 Sup. Ct. 683, 60 L. ed. 1125.

Plaintiff very properly puts stress upon the Campbell case in support of her cause of action. Well she may. But in that case

Campbell himself testified that he applied the emergency; the brakes took hold and then leaked off so as to become released. Moreover in that case, the evidence as a whole warranted a jury in finding that the brakes were applied at a definite place. But McCabe does not and cannot give direct testimony. He gives only his judgment. He practically disqualifies himself. At least he fails to qualify, and he does not disclose any qualification to testify as to this except that he is an experienced railroad conductor. This might aid him in estimating speed. The point is that his estimate as to the distance the train ran after the emergency application of the air is not predicated upon any physical object which he saw at any time or place from which he could by any mental process measure the distance the train ran. It clearly appears by his own testimony that his statement rests upon his impression of the length of time that elapsed between the time the air was pulled and the time when the train stopped. Under some circumstances this might be proper. It is not a case where the witness says the brakes were defective. In fact he says he has no reason to think that the brakes were not all right.

It is important to consider the state of mind of McCabe in a situation where he realized that many persons were in danger of losing their lives, to say nothing of great property loss, because of what he must have considered in part at least as his own delinquency. Moved by natural and creditable instinct to protect the many persons thus exposed to imminent danger, his anxiety must have been intense. He was absorbed in getting the attention of the engineer. He thought of nothing else. His mind in anticipation of the impending shock was in no condition to reckon time. To one in his unfortunate situation seconds would seem like minutes. Plaintiff's claim that the train ran a mile without the engineer apparently knowing that McCabe had applied the air, is not consistent with the fact that the engineer had his head out of the cab window. In such cold weather the only reasonable inference from the engineer having his head out is that he was looking for the occasion of the brakes being applied, and McCabe wished him to

look back sooner than he did. McCabe gives his opinion for a basis for the opinion of others. The instability of his judgment is apparent and we assume that he is worthy of credence as that is not for us to consider. His judgment should be based upon disclosed facts which, in the common experience of men, will reasonably support his conclusion. It is not. One's judgment as to the passage of time is only accurate when there is a succession of events occurring from which we can form mental impressions of the length of time that may have elapsed in a given case. This estimate is not based upon a single sight or noise, but it necessarily rests upon sensations as to lapse of time under a few most depressing moments.

The credibility of witnesses and preponderating weight of the evidence are for the jury, but whether there is evidence in the case to fairly and reasonably support the verdict is for the determination of the court. In such determination the court must recognize all the inferences that the jury could justly draw from the evidence and consider the character of plaintiff's proofs.

The trial court properly charged the jury that the evidence showed as a matter of law that the automatic air brakes were in good working condition when this train arrived in Delano. The uncontradicted testimony indicates that the air guage showed on the way to Delano a pressure of from 70 to 85 pounds, which was proper. Barnes says this pressure continued to the place of collision. McCabe says that, from the sound of the air when he pulled the air valve, he had no reason to feel anything wrong with the brakes. The presence of such pressure would practically eliminate any existing defects which would interfere with the application of the brakes in the usual way. McCabe testifies that he jumped off the train before it stopped and was up by the tender when the crash came. This is most improbable. Had there been time for him to have done so, the engineer would ordinarily have seen him and received a signal to back up. He may have been near the tender after the wreck. The passenger train knocked the freight engine back 175 feet. The two locomotives pulling the passenger with their tenders and one coach, as well as the gondola car with the

snowplow, were wrecked on the same side of the track where Mc-
Cabe was standing and had he been where he says he was he would
have been killed. Apparently he had just left the caboose and
was near the tender after the wreck when it had been thrown back
beside him. The physical facts in this respect indicate that McCabe
does not have any definite conception of what occurred. His testi-
mony in the two trials is not identical. If he cannot relate con-
sistently and in a probable way the obvious physical facts, much·
less may we safely rely on his sensation as to the lapse of time.

Plaintiff's proof of defective brakes by opinion testimony depends
upon McCabe's testimony for its foundation. Its improbability is
suggested by its inherent character in this, that it in substance
says that a mechanical device in perfect condition ceases to function
for one mile and then voluntarily resumes its normal efficiency and
stops the train in 1,000 to 1,200 feet. McCabe's testimony as to
the things from which an inference is sought to be drawn of de-
fective automatic brakes is, under all the circumstances, a mere
guess. The improbability just mentioned makes it unsafe even as
conjecture. It does not reach the dignity of proof. Witnesses and
juries must not be permitted to guess money or property from one
person to another. Substantial evidence must support those facts
from which essential inferences are to be drawn for the support of
a verdict. A verdict cannot rest on a conjectural foundation. The
testimony of McCabe is of such character that it will not permit a
jury to find a verdict for the plaintiff upon whom the burden of
proof is imposed by law. It rests inherently upon sensation alone
as to lapse of time and upon the assertion of a most anomalous be-
havior of a mechanical apparatus. Liability is dependent on rea-
sonably substantial proof. It is not present. Carleton v. G. N. Ry.
Co. 93 Minn. 378, 101 N. W. 501; Martyn v. M. & I. Ry. Co. 95
Minn. 333, 104 N. W. 133; Martin v. Courtney, 87 Minn. 197, 91
N. W. 487; McCool v. Davis, 158 Minn. 146, 197 N. W. 93; Dun.
Dig. § 7047 (14).

The trial court instructed the jury that the plaintiff could not
recover upon the negligence of McCabe. The record shows such

negligence in connection with the violation of order 56. Having reached the conclusion that plaintiff cannot recover upon the claim of defective brakes, it becomes necessary in the consideration of the motion for judgment non obstante to consider this ruling. Maijala v. G. N. Ry. Co. 133 Minn. 301, 158 N. W. 430.

Order 56 was directed to McDonald and McCabe. Under the rules of the company their obligations were separate and not joint. The highball signal from the conductor conferred no right upon McDonald. It was his duty under the rules to decline to obey any instruction from McCabe contrary to order 56 and upon receiving such contrary instructions to have reported the fact to the superintendent. Both the engineer and conductor had a duty, personal to himself, to see to it that order 56 was not violated. Its violation by McDonald in the absence of some other intervening and efficient cause, was negligence which continued to the place of the collision and was the producing cause of the accident. The fact that McCabe was also guilty of negligence, in his silent permission in allowing the engineer, who was the primary wrongdoer, to violate the order, will not permit plaintiff to recover upon the theory that McCabe's negligence was a contributing cause. To so hold would permit the anomaly of an employe, violating orders proximately resulting in his own injury, to recover upon the theory that if some other employe had done his duty and prevented the violation the injury would not have occurred. Decedent wrongfully put this train in motion and it was in his control up to the time of the collision. The trial court's instruction was correct. Frese v. C. B. & Q. R. Co. 263 U. S. 1, 44 Sup. Ct. 1, 68 L. ed. 131; Davis v. Kennedy, 266 U. S. 147, 45 Sup. Ct. 33, 69 L. ed. 212.

This case has been tried twice. The order from which the appeal is taken is reversed with directions to enter judgment for the defendant notwithstanding the verdict.

Reversed.