## STATE v. DAVID WYLIE.[1]

February 10, 1922.

No. 22,659.

**Conviction not warranted by confession alone.**

    1. In a criminal prosecution an alleged confession of the accused, is not sufficient to warrant a conviction, unless it is corroborated by independent evidence of the corpus delicti.

**Circumstantial evidence—actual proof of circumstances necessary.**

    2. Where circumstantial evidence is relied upon for a conviction in a criminal prosecution, the circumstances must be proved and not themselves presumed.

**Offer of evidence examined.**

    3. Evidence was offered for the purpose of showing a conspiracy between defendant Jungbauer and Pitzenberger, in procuring the articles alleged to have been stolen by the aid of a fictitious cash slip. On examination and analysis of the evidence, *held*, that while the testimony shows facts consistent with defendant's guilt, it fails to show that the cash slip was fictitious or to connect Pitzenberger with the issuance thereof.

    Defendant and two others were indicted by the grand jury of Ramsey county charged with the crime of grand larceny in the second degree, Defendant Wylie was tried separately in the district court for that county before Hanft, J., and a jury which found him guilty as charged in the indictment. From an order denying his motion for a new trial, he appealed. Reversed and remanded.

    *Herbert P. Keller* and *George G. Chapin*, for appellant.

    *Clifford L. Hilton*, Attorney General, *James E. Markham*, Assistant Attorney General, *R. D. O'Brien*, County Attorney, and *C. D. O'Brien, Jr.*, Assistant County Attorney, for respondent.

[1]Reported in 186 N. W. 707.

QUINN, J.

Appellant was indicted jointly with Jungbauer and Pitzenberger, charged with the larceny of eight pairs of window curtains, of the value of $108, the property of G. Sommers & Company, a corporation. He was tried separately and convicted of grand larceny in the second degree. From an order denying his motion for a new trial upon the ground that the verdict is not justified by the evidence, of errors in the rulings upon the admissibility of evidence and upon newly discovered evidence, he appeals.

The Sommers Company conducts a catalogue wholesale house in the city of St. Paul. It does an extensive business. Some of its customers call at the store, buy and carry away with them their purchases. The store is divided into departments, each carrying specified lines. Department P is on the third floor and carries house furnishings, including window curtains. In the usual course of business, as a bill of goods is being sold to a customer who is present, an order sheet is prepared in duplicate by the salesman, giving the date, name of purchaser, description and amount of goods, with the price, and then initialed by the manager or his assistant. One of these sheets is retained by the department, the other sent with the goods sold to the city desk, which was on the ground floor near the street entrance, to be prepared for delivery. The cashier's office was near the city desk.

One duty of the city desk is to issue consecutively numbered cash slips in duplicate for each sale, and to check all purchases coming to the desk and fill into the cash slip the date, description and price of the goods sold and the name of the purchaser. The employe performing that work becomes responsible for the check. On each slip is a stub, or border sheet, containing the number. The paper is perforated so that the stub can be torn off easily. When the purchaser calls for the goods, he is given a cash slip and required to take it to the cashier and pay his bill. The stub is torn off and retained by the cashier. The slip is stamped paid and given to the customer, and upon its presentation to the city desk he receives the goods and the stub of the other check, which is his door pass allow-

ing him to take the package from the store. The slips are audited and filed in the company's vault. The defendant Pitzenberger was assistant manager of the city desk. There were several others employed there. The defendant Wylie was stock clerk in Department P and Jungbauer was assistant manager of that department.

It is contended on behalf of the prosecution that with Wylie as stock clerk, Jungbauer as assistant manager of Department P, and Pitzenberger at the city desk, a scheme was concocted between them to purloin goods from that department; that to carry the conspiracy into effect a plan was devised whereby Wylie would make up order sheets for the purchase of goods upon which the prices would be stated at a small fraction of the regular or catalogue price; that Jungbauer would then O. K. the sheet and the goods would be sent to the city desk at a time when Pitzenberger was in charge; that the cash slip would then be made out by Pitzenberger at the prices indicated on the order sheet, taken by defendant to the cashier, the price as indicated paid, the slip stamped paid and returned so stamped to the defendant who would take it to the desk, receive the goods and take them from the store; that in this manner the curtains were obtained by the three defendants and thereafter appropriated to their own use. It is clear that if the proofs sustain such a scheme **for obtaining possession of the curtains and that they** were so taken and appropriated to the use of the taker for the purpose of depriving the owner thereof, there was a larceny committed.

Section 8870, G. S. 1913, provides that:

"Every person who, with intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person—shall take from the possession of the true owner, or of any other person, or obtain from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing, or secrete, withhold, or appropriate to his own use, or that of any person other than the true owner, any money, personal property, thing in action, evidence of debt, or contract, or article of value of any kind * * * steals such property, and shall be guilty of larceny."

Exhibit A is an order sheet, a form used by the Sommers Company in its business. It was confessedly filled out by appellant on January 13, 1921, in his own name, for eight pairs of job curtains from Department P at 75 cents a pair. This sheet was initialed by Jungbauer and sent to the city desk with eight pairs of curtains where a cash slip for six dollars was made out and passed to the cashier. Thereafter on the same day appellant called for the curtains, paid the six dollars, received the goods, together with a door pass, and took the same from the building. Upon trial the prosecution offered in evidence as Exhibit 2, eight pairs of curtains of the alleged value of $13.50 a pair, which it claims the officers procured from the homes of the appellant and one McKinnon. It is contended on behalf of the prosecution that these curtains are the identical ones which appellant obtained from the city desk, by means of Exhibit A and a fictitious cash slip issued by Pitzenberger, for which he paid 75 cents a pair and which are described in the indictment. The prosecution bases its right of conviction squarely upon the contention that appellant prepared Exhibit A in the form in which it is, for the purpose of obtaining the curtains described in the indictment and offered in evidence as Exhibit 2, and that Jungbauer initialed the order sheet for the purpose of assisting appellant to acquire possession of such curtains, and sent the same to the city desk while Pitzenberger was in attendance; that Pitzenberger issued a fictitious cash slip in the sum of six dollars therefor, pursuant to their scheme and that in this manner the curtains were purloined from the store.

Appellant admits having received the curtains referred to in order sheet Exhibit A and having paid the cashier six dollars therefor on January 13, 1921, but denies that they were of the value of $13.50 a pair and insists that they were job curtains selling at 75 cents a pair at the time he received them. He also denies the charge of conspiracy and claims that Jungbauer initialed Exhibit A in the usual course of business for the true price of the curtains therein referred to as they were then selling. The cash slip in question was not produced nor offered in evidence, it being claimed by the Sommers Company that it could not be found in the vault where such

slips were kept, nor is there any proof in the record that the slip was in the handwriting of Pitzenberger. Whether the verdict is warranted by the evidence depends upon whether the record contains any proof connecting Pitzenberger with the cash slip issued for the curtains referred to in Exhibit A.

It was contended upon the trial that the defendant confessed to Philip G. Orr, the general superintendent of G. Sommers & Company, that he had taken the curtains described in the indictment, and there was evidence, such as it was, tending in that direction. The reception of such evidence is alleged as error. Confession of an accused person is not sufficient, in a criminal prosecution, to warrant a conviction, unless it is corroborated by evidence independent of the corpus delicti. 16 C. J. 736; section 8462, G. S. 1913; State v. Laliyer, 4 Minn. 277 (368); State v. New, 22 Minn. 76; State v. Grear, 29 Minn. 221, 13 N. W. 140; State v. McLarne, 128 Minn. 163, 170 N. W. 787.

The evidence in the record before us bearing upon that part of the case is wholly circumstantial. The question then arises, whether the record, stripped of all its verbiage and the alleged confessions, contains sufficient evidence to show that the curtains described in the indictment were stolen at the place and in the manner claimed by the prosecution. We answer the question in the negative.

It is not claimed by the prosecution but that the curtains referred to in Exhibit A were in the possession of the owner when they were at the city desk. What it claims is that they were obtained from that place by the use of a certain fictitious cash slip issued by Pitzenberger. Concededly there were a number of persons working at the desk issuing cash slips on the day in question. There is no evidence in the record as to which one of those persons, if any, issued the cash slip for the curtains referred to in Exhibit A, or who delivered it to the cashier. The record is silent upon that proposition. Assuming that the articles referred to in Exhibit A were the curtains described in the indictment, there is no evidence in the record showing who was at the city desk at the time they were delivered there. There is no proof as to whose handwriting the slip was in. It was not produced at the trial. It is a mere conjecture which of the per-

sons at the desk issued the slip or delivered it to the cashier or whether it was fictitious. If the slip was fictitious the fact should have been shown by competent evidence. Otherwise the chain of circumstances is broken and there could be no legal conviction. Where circumstantial evidence is relied upon, the circumstances must be proved and not themselves presumed. People v. Razezicz, 206 N. Y. 249, 99 N. E. 557; 23 C. J. § 1792, Cooper v. Chicago & N. W. Ry. Co. 155 Wis. 614, 145 N. W. 203.

Aside from this view of the case the record is unsatisfactory. There were many theories advanced by the prosecution and much talk had during the trial. The record is voluminous and the procedure such that we feel the defendant did not have that fair and impartial trial accorded him which the law contemplates. We think a new trial should be granted.

Reversed and remanded.