RUTH MEYERS v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

July 2, 1926.

No. 25,440.

**Directed verdict for defendant justified by the evidence.**

1. Under the evidence, as disclosed by the record, the trial court was justified in directing a verdict in favor of the defendant.

**Failure of evidence to show negligence of defendant contributing to death of switchman.**

2. The evidence fails to show negligence on the part of the defendant or its switchman Witham which contributed to the death of plaintiff's intestate.

[1]Reported in 209 N. W. 892.

Evidence, 22 C. J. p. 84 n. 71.
Master and Servant, 39 C. J. p. 1054 n. 26; p. 1164 n. 45.

See notes in 47 L. R. A. (N. S.) 58; L. R. A. 1915C, 61; 10 A. L. R.
1226; 14 A. L. R. 736; 24 A. L. R. 642; 29 A. L. R. 1209; 18 R. C. L.
p. 853; 3 R. C. L. Supp. p. 862; 4 R. C. L. Supp. p. 1219; 5 R. C. L.
Supp. p. 1008.

Plaintiff appealed from an order denying his motion for a new trial after verdict directed for defendant, R. D. O'Brien, J., in an action in the district court for Ramsey county to recover for death of her intestate. Affirmed.

*Tom Davis* and *Ernest A. Michel,* for appellant.

*John E. Palmer* and *John L. Erdall,* for respondent.

QUINN, J.

Appeal by the plaintiff from an order denying a new trial after a directed verdict for defendant. The defendant is an interstate carrier by railroad. George Meyers, past 22 years of age, was killed at Gladstone, Michigan, March 20, 1923, while in the employ of the defendant as a switchman in its yards at that place. This action was brought under the Federal Employers Liability Act to recover for his death which occurred between 3 and 4 o'clock in the morning. He had been in the employ of the defendant company something over a month and had worked as a switchman for another railroad about 18 months.

Considerable was said at the trial and on this appeal as to his age and inexperience as a switchman, but no issue to that effect appears in the pleadings and evidence offered on behalf of plaintiff along that line was excluded. Other assignments of error in the rulings on the admission and exclusion of testimony are urged. We have considered them, but extended remarks along that line are unnecessary because of the conclusion we reach upon the main issues.

At the close of the testimony, defendant moved for a directed verdict upon the ground that plaintiff had failed to show any actionable negligence on the part of defendant which contributed to the death of plaintiff's intestate and that his death was due to accident or to

his own negligence for which respondent was not responsible. The motion was granted and from an order denying a new trial, plaintiff appealed.

There is a lead track in the yard extending from the northeast to the southwest with 10 switching tracks extending therefrom in a westerly direction which are connected with the lead track by switches approximately 100 feet apart. These tracks are numbered from south to north from 2 to 11, consecutively. The switching crew was composed of Hendrickson, the engineer; the fireman, Evans; the foreman, decedent Meyers, who followed the engine; and Witham, the field man. It was the duty of Meyers to work near the engine and pass signals to the engineer, also to cut off cars in switching movements. It was Witham's duty, as field man, to throw switches, give signals for Meyers to pass to the engineer, and to do other work at a distance from the engine. The foreman had general supervision of the making up of trains.

The crew commenced work at midnight and had made up a train on the west end of track 3. They then started to make up another train on the east end of the same track. Accordingly, a caboose was put on that track back next to the train which had already been made. The engine then went in on track 6, Meyers riding on the footboard of the tender and Witham attending to the throwing of switches and making couplings. The foreman gave an order to "pull six." There was snow on the ground and the weather was cold. The engine had difficulty in moving 18 cars and observing this the foreman detached all of the cars but 7. The engine then pulled out on the lead track with 7 cars. Meyers dropped off near switch 7 and on signal from Evans detached the rear 2 of the 7 cars and they were kicked in on track 3. The other 5 cars were empty and remained attached to the engine. The foreman again signaled to pull track 6, by lantern signal and by hollering to Meyers as he passed him. Witham was between switches 4 and 5, saw the signal and heard the oral order. The foreman again left the lead track and walked west between tracks 5 and 6 to make the coupling onto the remaining 11 cars. He did not apprise either Witham or Meyers of his intention. The engine stopped near switch 9 so that the

last of the 5 cars cleared switch 6. Witham testified that at that time he was near switch 6 and gave an easy back-up signal with his lantern.

The engineer testified that while his engine was standing near switch 9 Meyers stepped off on the ground and gave him a kick signal with his lantern, then stepped back on the footboard and pulled the coupling pin; that he then started his engine backwards towards track 6. As the first of the 5 cars reached Witham, he swung onto the end nearest the engine where the full ladder was. In so doing, he had his lantern in his right hand and reached up to the step of the ladder with both hands and threw his feet into the stirrup.

After the train had backed a few carlengths, Witham observed that the speed was getting greater than was safe for the intended coupling on account of the limited room they had on track 6. Noticing that he was on a curve and out of sight of the engineer, he got off and ran back to the lead, giving the engineer stop signals. The foreman, standing by the side of track 6, heard the cars increasing in speed and started immediately back to the lead giving the engineer like signals. These were observed by the engineer who promptly applied the emergency, reversed his engine and sanded the rails. Neither Witham nor the foreman knew that Meyers had given the engineer a signal to kick the 5 cars. As the brakes were applied to the engine, the 5 detached cars continued at a speed of from 12 to 15 miles per hour and struck the standing cars. Notwithstanding the efforts of the engineer, the engine slid into the first of the 5 cars with sufficient force to drive down the drawbar on the car, allowing the car and tender to come so close together that Meyers, who was on the footboard, was crushed and killed.

It is urged on behalf of appellant that Witham was negligent in handling his lantern while boarding the car, by raising his lantern straight above his head, similar in manner to a signal for a cut-off of the cars attached to the engine. It is argued that such movement was seen by Meyers from the footboard and he mistakenly took it for a signal to cut off all the cars.

Testimony was offered tending to show that if Meyers believed he had a signal to cut off the 5 cars, it was his duty to detach them and give the engineer a kick signal. Witham testified that if he had intended any such movement, he would have remained at the switch and given the cut-off signal, followed immediately by a kick signal which is made by revolving the lantern rapidly. It is manifest that decedent's death was caused by the kick signal given by him to the engineer and his detaching the cars from the engine. Had the operation directed by the foreman been carried out, the movement would not have been unsafe. There is testimony to the effect that, if the cars had not been detached, the emergency application of the brakes on the engine and other steps taken by the engineer would have sufficiently slowed down the 5 cars so that the impact would not have displaced the drawbar.

The engineer alone testified as to the time and place at which Meyers gave the kick signal and cut off the cars. He testified that he took signals from Meyers alone as was his duty; that he took no signals from any person but Meyers, excepting stop signals which he took from any one; that when the engine stopped near switch 9 and while it was standing still Meyers got off the foot-board and standing on the ground, gave him a kick signal by revolving his lantern rapidly; that Meyers immediately got back onto the foot-board and, as the engine started in response to the kick signal, Meyers pulled the pin with the lifting-lever and stood there holding it up; that he got no further signals of any kind until the emergency stop signals by Witham and Evans.

The witnesses Hendrickson, Evans and Witham were called by the plaintiff. Their testimony was uncontradicted and may not be disregarded unless so improbable or containing in itself so many inconsistencies as to furnish substantial reasons for believing it to be false. Klare v. Peterson, 161 Minn. 16, 200 N. W. 817, and cases cited.

Evans testified that he could tell from the exhaust that the train started slowly and proceeded two to three-car lengths when he observed the speed increasing; that when he reached the lead the

train was moving from 12 to 15 miles an hour. The circumstance contended for, that Meyers did not give the kick signal nor cut off the cars until after Witham boarded them, is not shown by any evidence in the case. It is disproved by the testimony of the engineer. The burden of showing the circumstance was upon plaintiff. The rule is well established that, whenever circumstantial evidence is relied upon to show a fact, the circumstances must be proven and not themselves presumed. State v. Wylie, 151 Minn. 375, 186 N. W. 707; Schendel v. C. M. & St. P. Ry. Co. 165 Minn. 223, 206 N. W. 436, and cases cited; McDonald v. G. N. Ry. Co. 166 Minn. 87, 207 N. W. 194; C. M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 46 Sup. Ct. 564, 70 L. ed. 629, decided by the U. S. Supreme Court on June 1, 1926, and cases cited. It may be here remarked that, if the testimony of the engineer Hendrickson be disregarded, the essential fact in the determination of this lawsuit would be left wholly to inference. If it is given effect, it disproves the essential fact.

To sustain appellant's theory, it would be necessary to infer that Meyers saw Witham at the time he raised his hands to swing onto the car. Witham says he did not intend to give a cut-off signal; that he does not know whether Meyers was looking at him at the time he boarded the car; that he was not looking towards Meyers as he was giving attention so that he would not lose his footing; that as he swung on with "the revolving of a wheel once or twice," he would be out of sight as the cars swung in on track 6. To sustain such contention it must not only be assumed that Meyers saw Witham's lantern at the time he boarded the car, but it must also be assumed that Meyers made a mistake and took the act for a signal. Leaving out of consideration the testimony of the engineer, the reasons assigned for the acts of Meyers in cutting off and kicking the cars necessitate the drawing of one inference from another and clearly leave the matter in the realm of speculation and conjecture. Muggenburg v. Fink, 166 Minn. 411, 208 N. W. 134.

It cannot be said that the manner in which Witham boarded the car was negligent. In this connection, appellant called the foreman and another switchman of long experience, who testified that

in their opinion the act of Witham in boarding the car was improper, but neither was able to state what manner was any more proper under the circumstances. They testified that there was no rule or regulation prescribing the manner in which a switchman shall board a moving car and that every man gets on a car the best and safest way his judgment dictates under the circumstances. Such was the testimony of all the witnesses testifying in relation thereto. Witham testified that he got on in the usual and customary way, the way which he considered safe. Neither this court nor a jury may even suggest a rule as to the manner of a switchman boarding a moving car under such circumstances. If Meyers mistook the movement of the lantern for a cut-off signal, he made a mistake which arose from an operation incident to the work being done.

The claim that Witham was negligent in leaving switch 6 for the purpose of making the coupling is not supported by the evidence. His uncontroverted testimony is that he had no knowledge of the whereabouts of Evans; that it was his duty to ride down on the first car, give the proper signals for easing down to make a safe coupling and to make the coupling. It was conceded by appellant's expert witnesses that, if Witham did not know Evans was at a place to make the coupling, it was his duty to do so and that he did his duty in this respect, and that it was not improper for him to leave the switch for such purpose.

There is no support for the claim that, when Witham observed the increased speed of the cars he did not act as promptly as he should in getting off and giving the emergency stop signal. Witham's testimony is that he did not know that a kick signal had been given or a cut off made; that, as soon as he realized the speed was greater than it should be, he looked for Meyers and, not being able to see him, he jumped off and ran to the lead, giving the stop signal as quickly as he possibly could.

We are unable to see what Witham did or omitted to do which amounted to negligence. The trial court was right in concluding that the testimony and all inferences which the jury might reasonably draw therefrom were insufficient to support a finding of negli-

gence of the defendant causing or contributing to the death of plaintiff's intestate. The contentions made on behalf of plaintiff are without that substantial support which the law requires.

Affirmed.